**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ISRAEL,                          No. C 09-1525 CW (PR)

          Plaintiff,            ORDER DENYING AS MOOT PLAINTIFF'S
                                MOTION TO STRIKE PORTIONS OF
                                DEFENDANT RODRIGUEZ'S DECLARATION;
     v.                         DENYING PLAINTIFF'S MOTION TO
                                COMPEL DISCOVERY; DISMISSING CLAIMS
                                AGAINST DEFENDANT MASTO; AND
CHARLES D. LEE, M.D., et al.,   GRANTING DEFENDANTS RODRIGUEZ'S AND
                                LEE'S MOTION FOR SUMMARY JUDGMENT

          Defendants.
_____/   (Docket nos. 39, 40, 46)

INTRODUCTION

Plaintiff Michael Isreal, an inmate currently incarcerated at the California Substance Abuse Treatment Facility (CSATF), originally filed this civil rights complaint in the form of a petition for a writ of habeas corpus. On August 24, 2009, the Court issued an Order of Dismissal and granted leave to amend with instructions for Plaintiff to file his complaint on the correct civil rights complaint form, to name as a defendant each person who violated his civil rights with an explanation of how each defendant violated his rights, and to provide proof of exhaustion of administrative remedies.

On September 25, 2009, Plaintiff filed a civil rights complaint alleging a claim of deliberate indifference to his serious medical needs while he was incarcerated at Salinas Valley State Prison (SVSP) in 2007. Plaintiff alleges Defendants Natividad Medical Center Doctor Daniel Masto, SVSP Health Care Manager Charles D. Lee and SVSP Nurse Practitioner Robin Rodriguez failed to provide proper treatment following his August 3, 2007

surgical hemorrhoidectomy and proctosigmoidoscopy,[1] performed by
Defendant Masto.

Specifically, Plaintiff maintains that after his surgery on
August 30, 2007, Defendants Rodriguez, Lee and Masto acted with
deliberate indifference to his medical needs as follows:
(1) Defendant Rodriguez refused to comply with Defendant Masto's
post-operation orders, which caused Plaintiff's post-operation
wounds to re-open and become infected; (2) Defendant Rodriguez
administered the incorrect medication to Plaintiff for twenty-one
days, causing Plaintiff considerable pain and suffering;
(3) Defendant Rodriguez performed an invasive procedure using a
catheter in an unsanitary office instead of in a facility clinic,
which led to Plaintiff contracting an infection; (4) Defendants
Rodriguez's and Lee's actions, inactions, and refusal to contact
Defendant Masto regarding his post-operation order following
Plaintiff's allegedly abnormal recovery "caused Plaintiff
unnecessary and wanton infliction of pain and suffering";
(5) Defendant Lee's policy prohibits inmates from recovering from
surgical procedures in prison hospitals, and he did nothing despite
Plaintiff's complaints; and (6) Defendant Masto mis-diagnosed
Plaintiff, did not successfully carry out Plaintiff's
hemorrhoidectomy, and did not do a follow up on the surgery.  As a
result, Plaintiff suffered continued pain, difficulty in voiding as
well as rectal bleeding.

In its May 18, 2010 Order of Service, the Court conducted an

---

[1] Hemorrhoidectomy is the surgical removal of hemorrhoids,
which are enlarged or dilated veins located in and around the
rectum and anus.  Proctosigmoidoscopy is a procedure for
examination of the anus, rectum, and distal sigmoid colon (the last
segment of the colon before the rectum begins).

initial screening of Plaintiff's complaint pursuant to 28 U.S.C.
§ 1915A(a) and found cognizable his Eighth Amendment claims against
Defendants Rodriguez and Lee, alleging that these Defendants were
deliberately indifferent to Plaintiff's serious medical needs.
(May 18, 2010 Order at 5.)  The Court dismissed Plaintiff's
deliberate indifference claim against Defendant Masto with leave to
amend for failure to state a cognizable Eighth Amendment claim.
Plaintiff was given until June 18, 2010 to file an amendment to the
complaint to reassert his claim against Defendant Masto if he
could, in good faith, allege a valid basis for liability.
Plaintiff was informed that the failure to do so would result in
the dismissal of his Eighth Amendment claim against Defendant Masto
without prejudice.  To date, Plaintiff has not filed an amendment
to the complaint; therefore, all claims against Defendant Masto
will be dismissed with prejudice, as explained below.

On July 28, 2010, Defendant Lee submitted his answer.  On
August 17, 2010, Defendant Rodriguez submitted his answer.

On March 15, 2011, Defendants Rodriguez and Lee moved for
summary judgment on the grounds that Plaintiff raises no issue as
to any material fact, that they are entitled to judgment as a
matter of law and that they are entitled to qualified immunity.  On
May 16, 2011, Plaintiff filed an opposition to Defendants' motion
for summary judgment and a motion to strike Defendant Rodriguez's
declaration as Plaintiff contends that it was submitted in bad
faith.  On June 8, 2011, Defendants filed their reply.

On December 22, 2011, Plaintiff filed a motion to compel
discovery.  On January 6, 2012, Defendants filed an opposition to
Plaintiff's motion.  On January 23, 2012, Plaintiff filed a reply

to Defendants' opposition.

For the reasons discussed below, the Court DENIES as moot Plaintiff's motion to strike portions of Defendant Rodriguez's declaration; DENIES Plaintiff's motion to compel; DISMISSES with prejudice all claims against Defendant Masto; and GRANTS Defendants Rodriguez's and Lee's motion for summary judgment.

DISCUSSION

I.   Plaintiff's Motion to Compel Discovery

Plaintiff has filed a motion to compel discovery (docket no. 46).  Plaintiff has not filed a motion under Rule 56(d) of the Federal Rules of Civil Procedure to defer the resolution of the summary judgment motion pending resolution of his discovery requests.

Rule 56(d) provides a procedure by which a party may avoid summary judgment when such party has not had sufficient opportunity to discover affirmative evidence necessary to oppose the motion. See Garrett v. San Francisco, 818 F. 2d 1515, 1518 (9th Cir. 1987).[2]

Even if Plaintiff had filed a motion under Rule 56(d), there is no indication that the requested discovery would enable Plaintiff to successfully oppose the motion for summary judgment as to the deliberate indifference claim against Defendants.  Plaintiff states in his discovery motion that Defendants have failed to provide answers to his interrogatories despite his discovery

---

[2] Garrett cites to Rule 56(f), the subsection in which the provisions pertaining to a party's inability to present facts essential to justify its opposition formerly were set forth; as of December 1, 2010, the applicable provision is Rule 56(d).  See Fed. R. Civ. P. 56.

United States District Court
For the Northern District of California

requests.  (Pl.'s Mot. Compel at 1.)  As the Ninth Circuit stated in Continental Maritime v. Pacific Coast Metal Trades, 817 F.2d 1391, 1395 (9th Cir. 1987), "the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact."  Plaintiff has not met this burden.  The requested documents are sought without explanation of what specific, material facts these documents will likely disclose.  Plaintiff does not explain in his motion to compel what specific facts he hopes to discover that will raise an issue of material fact.  Plaintiff also fails to demonstrate how "additional discovery would have revealed specific facts precluding summary judgment."  See Tatum v. City and County of S.F., 441 F.3d 1090, 1101 (9th Cir. 2006).  The Court has reviewed the discovery requests and responses, and it does not appear that any further responses that could be required would affect the ruling on this motion.  Thus, Plaintiff has not met his burden under Rule 56(d).  Therefore, the Court will not defer ruling on the summary judgment motion.  See Continental Maritime, 817 F.2d at 1395; Tatum, 441 F.3d at 1101.  Accordingly, Plaintiff's motion to compel discovery (docket no. 46) is DENIED.

The Court will now address the merits of the Defendants' motion for summary judgment.

II.  Defendants' Motion for Summary Judgment

A.  Standard of Review

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

United States District Court
For the Northern District of California

56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409

United States District Court
For the Northern District of California

(9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 994 (1991).  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. <u>Celotex</u>, 477 U.S. at 323.

      B.   Evidence Considered

     A district court may only consider admissible evidence in ruling on a motion for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773 (9th Cir. 2002).

     In support of Defendants' motion for summary judgment, declarations have been filed by Custodian of Medical Records Deborah Christie, Defendant Rodriguez[3] and Defendants' attorney, Matthew Roman, Esq.

     Plaintiff verified his complaint on September 22, 2009 by signing it under penalty of perjury.  Plaintiff submitted his opposition to Defendants' motion for summary judgment and his motion to strike portions of Defendant Rodriguez's declaration on May 10, 2011.  Plaintiff claims that the Court should strike portions of Defendant Rodriguez's declaration, stating:

> In paragraph "2." And "4." Defendant Rodriguez swears that Dr. Masto's outpatient orders/post-ops were not available for her to review on August 30, 2007 to September 5, 2007. Defendant Rodriguez and her lawyer after reviewing Plaintiff['s] complaint and medical records had to know and should have known that she had signed Dr. Masto post ops order on August 30, 2007; See Exhibit-A, which represent four pages of Dr. Masto['s] outpatient orders that Defendant Rodriguez had reviewed, ignored and signed off on on August 30, 2007 and August 31, 2007.  Which establishes that she knew she was not to give Plaintiff codeine.  Nor wait 20 days to give Plaintiff laxative.  See Exhibit-B.

---

[3] Defendant Rodriguez has submitted two declarations. However, in this Order, the Court only cites to Defendant Rodriguez's declaration attached to the motion for summary judgment.

United States District Court
For the Northern District of California

(Pl.'s Opp'n and Mot. to Strike at 3.)  Plaintiff's allegations in his opposition and motion to strike are not verified in conformity with 28 U.S.C. § 1746 because Plaintiff does not assert any of these statements under "penalty of perjury."  Meanwhile, Attorney Roman has submitted a declaration asserting that Defendant Rodriguez did not sign Dr. Masto's "post ops order on August 30, 2007," stating:

> The relevant medical records, submitted as exhibits to the declaration of Health Records Technician Deborah Christie, were marked with "Post-It" tabs on each page . . . .  [¶]  The tabs were placed on the documents to mark them as the most relevant of the plaintiff's medical records, which include hundreds of pages of documents.  The tabs were left on these documents as a result of a simple administrative error.  [¶] The document reviewed by defendant nurse Rodriguez did not contain the tabs, and Nurse Rodriguez was able to see the note in its entirety.  Per the declaration of Nurse Rodriguez, submitted herewith, the note is not in her handwriting, nor does it contain her signature.

(Roman Decl. ¶ 3-5, Jun. 8, 2011.)  In an abundance of caution, the Court will not consider the portions of Defendant Rodriguez's declaration alleged as having been made in bad faith; therefore, it DENIES Plaintiff's motion to strike as moot.[4]  Specifically, the Court will not consider the last sentences of paragraphs two and four of Defendant Rodriguez's declaration, alleging that Defendant Masto's Report was not available for Defendant Rodriguez to review when she prescribed Acetaminophen with Codeine on August 30, 2007 and September 5, 2007.

Where, as here, Plaintiff has not filed a verified opposition

---

[4]  The Court is not considering the contents of Plaintiff's opposition, except for certain statements in his motion to strike relevant portions of Defendant Rodriguez's declaration.  While not submitted under penalty of perjury, the Court will consider these statements in Plaintiff's motion so as to understand the complete factual circumstances.

to the motion for summary judgment, the Court may treat the allegations in a verified complaint as an opposing affidavit to the extent such allegations are based on Plaintiff's personal knowledge and set forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating a plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, he stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

Therefore, for the purposes of resolving the motion for summary judgment, the Court will treat Plaintiff's complaint as an affidavit in opposition to Defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  See Schroeder, 55 F.3d at 460 & nn.10-11.

C.    Injunctive Relief Claims

Plaintiff seeks both injunctive relief and money damages.  The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution.  PUC v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996).  A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented.  See Flast v. Cohen, 392 U.S. 83, 95 (1968).  Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances.  See Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996).

**United States District Court**
For the Northern District of California

When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot.  See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness.  Id.

When Plaintiff filed his complaint, he was incarcerated at SVSP.  He alleged unconstitutional conditions of confinement during the period of his confinement at SVSP in 2007.  Plaintiff sought injunctive relief to remedy these alleged injuries.  On June 3, 2010, Plaintiff informed the Court he had been transferred to the California Correctional Institution, and thereafter, to High Desert State Prison (HDSP).  On March 7, 2011, Plaintiff notified the Court that he was again transferred to CSATF.  Because Plaintiff has not been incarcerated at SVSP since at least June, 2010, to the extent he seeks injunctive relief from the conditions of his confinement at SVSP those claims are DISMISSED as moot.[5]  The Court proceeds to resolve Defendants' motion for summary judgment as to Plaintiff's remaining claims for damages.

D.   Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious medical needs

_____

[5] Should Plaintiff seek to allege that some or all of his claims extend to the conditions of his confinement at either HDSP in Susanville or CSATF in Corcoran, those claims must be brought in a separate lawsuit in the United States District Court for the Eastern District of California, the proper venue for claims arising in Lassen County, where Susanville is located, and in Kings County, where Corcoran is located.  See 28 U.S.C. § 1391(b); 28 U.S.C. § 84(d).

United States District Court
For the Northern District of California

violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. McGuckin, 974 F.2d at 1059; Toguchi v. Chung, 391 F.3d 1051, 1130 (9th Cir.

2004).  Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment amount to deliberate indifference.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  A mere difference in medical opinion is insufficient to support a claim for deliberate indifference.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  In particular, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference.  Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Rather, in order to prevail on a claim based on delayed treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, that such treatment was chosen in conscious disregard of an excessive risk to the plaintiff's health and that the delay resulted in harm to the plaintiff.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature and duration of the deprivation.  Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  With respect to the subjective component, the requisite state of mind depends on the nature of the claim.  In prison-conditions cases, the necessary state of mind is one of "deliberate indifference."  See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle, 429 U.S. at 104 (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

**United States District Court**
For the Northern District of California

1    Deliberate indifference describes a state of mind more

2   blameworthy than negligence.  <u>See</u> <u>Farmer</u>, 511 U.S. at 835 (citing

3   <u>Estelle</u>, 429 U.S. at 104).  Neither negligence nor gross negligence

4   will constitute deliberate indifference.  <u>See</u> <u>Farmer</u>, 511 U.S. at

5   835-36 & n.4; <u>see</u> <u>also</u> <u>Estelle</u>, 429 U.S. at 106 (establishing that

6   deliberate indifference requires more than negligence).

7    The Court finds that Plaintiff has failed to raise a triable

8   issue as to whether Defendants Rodriguez and Lee acted with

9   deliberate indifference to his medical needs.  To survive the

10  summary judgment motion, Plaintiff must raise a triable issue of

11  fact as to both the objective and subjective prongs of the

12  deliberate indifference analysis.

13   Viewing the evidence in the light most favorable to Plaintiff,

14  there is no triable issue because there is no evidence that

15  Defendants acted with a conscious disregard for Plaintiff's health,

16  that is, that they were, subjectively, deliberately indifferent to

17  a risk to Plaintiff's medical needs, as explained below.

18       1.   Defendant Rodriguez

19            a.   Facts

20   Plaintiff's medical records indicate a history of chronic

21  hemorrhoids with bleeding and prolapse.[6] (Christie Decl., Ex. A.,

22  Dec. 8, 2010.)

23   On June 19, 2007, Defendant Rodriguez, Plaintiff's Primary

24  Care Provider (PCP), examined Plaintiff regarding his chronic

25  hemorrhoids.  (<u>Id.</u>, Ex. B; Rodriquez Decl. at 2:1-2.)  Defendant

26  Rodriguez's notes indicate that Plaintiff's hemorrhoids were not

27

28        [6]  Rectal "prolapse" occurs when the tissue that lines the
    rectum falls down into or protrudes through the anal opening.

United States District Court
For the Northern District of California

being relieved through the use of laxatives and suppositories.
(Christie Decl., Ex. B.)  Defendant Rodriguez subsequently referred
Plaintiff to Defendant Masto, a physician who specialized in
general surgery at the Natividad Medical Center.  (<u>Id.</u>)

On August 1, 2007, Defendant Masto examined Plaintiff and
indicated in his report that Plaintiff was referred to him because
of "hemorrhoids of five years duration."  (<u>Id.</u>, Ex. C at 1.)
Defendant Masto noted that, while Plaintiff did experience some
bleeding both in the toilet bowl and on the toilet tissue,
Plaintiff believed that there was "probably a cup of blood every
time he ha[d] a bowel movement."  (<u>Id.</u>)  Defendant Masto observed
that Plaintiff has a tendency to constipation and has associated
pain and intermittent prolapse.  (<u>Id.</u>)  During the examination,
Defendant Masto also noted that Plaintiff had an enlarged prostate,
and internal and external hemorrhoids; however, there was no
bleeding at the time of the examination.  (<u>Id.</u> at 2.)  Defendant
Masto recommended that Plaintiff undergo both a hemorrhoidectomy
and a proctosigmoidoscopy.  (<u>Id.</u> at 2.)  Defendant Masto provided
Plaintiff with the following informed consent information regarding
the hemorrhoidectomy:

> [Plaintiff] understands that healing will take 4-6
> weeks.  He also understands that he will need to take
> Sitz baths[7] for 10-15 minutes 3-4 times a day.  He will
> require hemorrhoidal ointment, and it is imperative that
> he be on a regimen of stool softeners and laxatives as
> needed, since constipation will be a real problem after
> surgery.  If he doesn't control his constipation
> problem, the hemorrhoids and he will have a similar
> problem as he has now.  The patient understands these
> things and is agreeable to surgery.

---

[7] A sitz bath is a warm water bath used for healing or
cleansing purposes.  The water may contain medication and the baths
are often recommended to relieve pain and speed healing after a
hemorrhoidectomy.

(<u>Id.</u> (footnote added).)

On August 30, 2007, Defendant Masto operated on Plaintiff and performed both the hemorrhoidectomy and proctosigmoidoscopy. (<u>Id.</u>, Ex. D at 1.) Defendant Masto's "Operative Report" indicated that the largest hemorrhoidal mass was located on the right sidewall, and that there were three hemorrhoidal masses present. (<u>Id.</u> at 1-2.) According to Defendant Masto's report, the three hemorrhoidal masses were "resected,"[8] leaving skin bridges between the masses. (<u>Id.</u> at 2.) After the hemorrhoidectomy was completed, Defendant Masto performed the proctosigmoidoscopy without incident. (<u>Id.</u>) Defendant Masto's report indicates that Plaintiff tolerated the procedure, and was sent to the postanasthetic recovery room following the surgery. (<u>Id</u>)

The "Outpatient Doctors['] Orders" given at the Natividad Medical Center recommended the use of sitz baths, hemorrhoidal ointment, stool softener, laxatives and an analgesia such as Percocet or Vicodin. (<u>Id.</u>, Ex. E at 1.) Defendant Masto recommended against using Codeine as it causes constipation. (<u>Id.</u>)

On August 30, 2007, shortly after his surgical hemorrhoidectomy, Plaintiff returned from Natividad Medical Center to SVSP. (Rodriguez Decl. 2:1-2, Mar. 14, 2011.) Subsequently, SVSP Physician Duc Nguyen prepared a second post-surgery form recommending the use of sitz baths, hemorrhoidal ointment, and stool softeners, the resumption of regular medications and the removal of anal dressing and packing during the first sitz bath. (Christie Decl., Ex. F at 1.)

---

[8] Resected means removed.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Also on August 30, 2007, upon his return to SVSP, Defendant

2    Rodriguez examined Plaintiff. (Rodriguez Decl. 2:1-2.) Plaintiff

3    complained of excruciating pain and indicated that he had not

4    urinated since his return to SVSP. (Id. at 2:2-4.) Defendant

5    Rodriguez ordered that a straight catheter be inserted to assist

6    Plaintiff with urinating, but he was still unable to urinate. (Id.

7    at 2:3.) Plaintiff alleges that Defendant Rodriguez performed an

8    invasive procedure using a catheter in an unsanitary office instead

9    of a facility clinic, which caused Plaintiff to contract an

10   infection. (Compl. at 3.) Defendant Rodriguez subsequently

11   prescribed Acetaminophen with Codeine. (Rodriguez Decl. 2:4.;

12   Christie Decl., Ex. G at 1.) Plaintiff claims that Defendant

13   Masto's report -- recommending against using Codeine -- was

14   available for Defendant Rodriguez to review before she prescribed

15   Acetaminophen with Codeine on August 30, 2007.[9] (Pl.'s Opp'n and

16   Mot. to Strike at 3.)

17   Dr. Nguyen's August 30, 2007 physician order also prescribed

18   the use of Acetaminophen with Codeine as needed for ten days and

19   Hydrocortisone cream as needed for thirty days. (Christie Decl.,

20   Ex. H at 1.)

21   On August 31, 2007, Defendant Rodriguez examined Plaintiff in

22   response to continued complaints regarding pain and difficulty in

23   voiding. (Id., Ex. I at 1.) Defendant Rodriguez noted that the

24   packing was removed from Plaintiff's rectum during his first sitz

25   bath. (Id.) Defendant Rodriguez also ordered that Plaintiff use

26   _____

27   [9] As explained above, Plaintiff's allegations in his motion to
strike are not submitted under penalty of perjury; therefore, the
28   Court only includes these statements in order to present a complete
factual background.

United States District Court
For the Northern District of California

hemorrhoidal ointment (Anusol).  (Id. at 3.)

On September 4, 2007, SVSP Physician Robert Bowman discontinued Plaintiff's prescription of Acetaminophen with Codeine.  (Id., Ex. J at 1.)  Dr. Bowman subsequently prescribed Vicodin four times per day for seven days, and triple the amount of antibiotic ointment to the anal area three times per day for fourteen days.  (Id. at 1.)  Dr. Bowman also ordered Plaintiff a thirty-day chrono[10] for daily use of the disability shower.  (Id. at 2.)

On September 5, 2007, while Defendant Rodriguez was at another SVSP medical clinic, she was informed that Plaintiff was experiencing pain and that the Vicodin prescribed by Dr. Bowman was unavailable.  (Rodriguez Decl. 2:10-12.)  Defendant Rodriguez subsequently faxed an order prescribing Acetaminophen with Codeine. (Id. at 2:12-13.)  Again, Plaintiff claims that Defendant Rodriguez had the opportunity to review Defendant Masto's Report recommending against using Codeine before she prescribed Acetaminophen with Codeine on September 5, 2007.  (Pl.'s Opp'n and Mot. to Strike at 3.)

On September 12, 2007, Defendant Rodriguez prescribed Senekot laxatives twice per day for five days.  (Christie Decl., Ex. K at 1.)  In the same order, Defendant Rodriguez also prescribed Ibuprofen to be taken twice per day for fourteen days.  (Id)

On September 18, 2007, Defendant Rodriguez examined Plaintiff after he complained of rectal pain, as well as unrelated neck,

---

[10]   A "chrono" is a form that allows prisoners to request certain medical accommodations as deemed necessary by medical staff.

17

United States District Court
For the Northern District of California

shoulder and knee pain.  (Id., Ex. L at 1.)  Defendant Rodriguez

prescribed Senekot laxatives to be taken three times per day as

needed for ten days.  (Id. at 3.)

On October 18, 2007, Defendant Rodriguez again examined

Plaintiff regarding his complaints of continued constipation and

rectal pain.  (Id., Ex. M at 1.)  Defendant Rodriguez prescribed

Milk of Magnesia for his constipation, and educated him on the

proper use of medication, fluids, diet and exercise.  (Id. at 1.)

On November 18, 2007, Registered Nurse (RN) Ann Alton reported

that Plaintiff informed a Licensed Vocational Nurse (LVN) in the C-

yard that he was having rectal bleeding.  (Id., Ex. N at 1.)

Plaintiff alleges that Defendant Rodriguez refused to comply with

Defendant Masto's post-operation orders, which caused Plaintiff's

post-operation wounds to re-open and become infected.  (Compl. at

3.)  When the LVN asked Plaintiff to use a pad to save specimens,

Plaintiff became angry.  (Christie Decl., Ex. N at 1.)  No blood or

drainage was obtained from Plaintiff.  (Id. at 1.)  Nurse Alton

subsequently instructed the LVN to place Plaintiff in the "MD line"

(medical line) to be assessed on the yard for further examination.

(Id. at 1.)

On December 14, 2007, Plaintiff was examined again after

complaining that he was experiencing rectal bleeding during every

bowel movement.  (Id., Ex. O at 1.)  Again, there was no evidence

of bleeding at the time of the examination.  (Id. at 1.)

On January 4, 2008, Plaintiff was examined after complaining

about pain and constipation following his hemorrhoidectomy.  (Id.,

Ex. P at 1.)  A visual inspection of Plaintiff's rectum indicated

no sign of rectal bleeding.  (Id. at 1.)  Plaintiff refused the

recommended hemorrhoidal suppositories, and was instead given Metamucil to alleviate his constipation.  (<u>Id.</u> at 1.)  Plaintiff was assigned to the January 15, 2008 "MD line."  (<u>Id.</u> at 1.)

On January 15, 2008, SVSP Physician Raskin examined Plaintiff, who was on the "MD line."  Plaintiff complained about constipation, painful bowel movements and rectal bleeding.  (<u>Id.</u>, Ex. Q at 1.) Dr. Raskin revised Plaintiff's referral for a colonoscopy from routine to urgent.  (<u>Id.</u> at 2.)

On January 31, 2008, the colonoscopy was performed on Plaintiff at the Natividad Medical Center.  (<u>Id.</u>, Ex. R at 1.)  The procedure revealed a polyp[11] and internal hemorrhoids.  (<u>Id.</u> at 1.) The report indicated that a small amount of blood resulted from the inflamed hemorrhoids, but that some bleeding could have resulted from the healing surgical scar of the recent hemorrhoidectomy. (<u>Id.</u> at 1.)  Dr. Tabbaa recommended that Plaintiff continue using his current medications, including laxatives and Anusol suppositories.  (<u>Id.</u> at 1.)

The treatment of Plaintiff's hemorrhoids and associated pains and complaints continued while he was housed at SVSP.

b.   Analysis

Plaintiff's allegations fail to raise a triable issue of fact as to whether Defendant Rodriguez acted with deliberate indifference under the subjective prong of <u>Farmer</u>.  511 U.S. at 834.

First, Plaintiff alleges that Defendant Rodriguez refused to comply with Defendant Masto's post-operation orders, which caused

---

[11]  A colon "polyp" is a fleshy growth on the inside lining of the colon.

19

United States District Court
For the Northern District of California

1  Plaintiff's post-operation wounds to re-open and become infected.

2  (Compl. at 3.)  In an effort to treat Plaintiff's complaints of

3  excruciating pain and his inability to urinate, Defendant Rodriguez

4  ordered a straight catheter in order to assist Plaintiff in

5  urinating and prescribed Acetaminophen with Codeine to alleviate

6  his pain.  (Rodriguez Decl. 2:2-4, Mar. 14, 2011; Christie Decl.,

7  Ex. G at 1.)  Plaintiff fails to raise a triable issue of fact

8  because, even if Defendant Rodriguez's actions may have caused

9  Plaintiff's post-operation wounds to re-open, her attempts to

10 alleviate Plaintiff's pain demonstrate that she did not display a

11 mental state of deliberate indifference to his serious medical

12 needs.

13       Plaintiff also alleges that Defendant Rodriguez prescribed the

14 incorrect medication -- specifically, Acetaminophen with Codeine --

15 to Plaintiff for twenty-one days, causing him considerable pain and

16 suffering.  (Compl. at 3.)  Specifically, on August 30, 2007 and

17 again on September 5, 2007, Plaintiff claims that Defendant

18 Rodriguez had an opportunity to review Defendant Masto's Report

19 that recommended against the use of Codeine because it causes

20 constipation.  (Pl.'s Opp'n and Mot. to Strike at 3.)  First,

21 Defendant Rodriguez made an effort to treat and alleviate

22 Plaintiff's pain by recommending the use of Acetaminophen with

23 Codeine.  (Rodriguez Decl. 2:3-5; 10-14.)  Second, Defendant

24 Rodriguez's treatment was based on her medical judgment, consistent

25 with her examinations of Plaintiff following his surgery.  Third,

26 Defendant Rodriguez's recommendation was consistent with Dr.

27 Nguyen's August 30, 2007 post-operation order, also recommending

28 Acetaminophen with Codeine.  (Christie Decl., Ex. H at 1.)

United States District Court
For the Northern District of California

Plaintiff's argument evidences a difference of medical opinion, i.e., if Plaintiff had received another medication from Defendant Rodriguez, then he would not have suffered painful constipation. Even if Plaintiff should have received different treatment for his medical needs, a difference of opinion as to the treatment of his medical needs is insufficient, as a matter of law, to establish deliberate indifference. See Toguchi, 391 F.3d at 1058, 1059-60; Sanchez, 891 F.2d at 242. Although the medical treatment Plaintiff received may not have been what he considered proper treatment, he presents no evidence that Defendant Rodriguez was deliberately indifferent to his serious medical needs. Rather, she (1) diagnosed his medical conditions as they arose; (2) monitored his status with followup treatments; and (3) administered medication in an effort to alleviate his pain. Thus, Plaintiff has failed to provide evidence regarding an essential element of this claim. Even if Defendant Rodriguez's recommendation of Acetaminophen with Codeine specifically caused Plaintiff harm, Plaintiff has no evidence that Defendant Rodriguez purposefully acted with deliberate indifference to Plaintiff's serious medical needs. Plaintiff's allegations amount at most to negligence based on Defendant Rodriguez administering Acetaminophen with Codeine (rather than Vicodin) when attempting to alleviate Plaintiff's pain. However, as mentioned above, negligence and even gross negligence are not enough to amount to an Eighth Amendment violation. See Farmer, 511 U.S. at 835.

Plaintiff further alleges that Defendant Rodriguez performed an invasive procedure using a catheter in an unsanitary office instead of a facility clinic, which caused Plaintiff to contract an

United States District Court
For the Northern District of California

infection.  (Compl. at 3.)  First, Plaintiff makes a conclusory

statement that the conditions were "unsanitary."  Again, even if

the conditions were unsanitary, Plaintiff's claim amounts only to

negligence in providing treatment and does not support a claim of

deliberate indifference.  The record shows that Defendant Rodriguez

ordered a straight catheter in order to assist Plaintiff with

urinating following his complaints that he was unable to do so.

(Rodriguez Decl. 2:6-7.)  Defendant Rodriguez claims that "the

procedures were performed with sterile equipment using proper

techniques to limit discomfort."  (Id. at 2:7-8.)  Even if

Plaintiff suffered an infection as a result of the insertion of the

catheter, his medical records indicate that his complaints were not

unheeded by Defendant Rodriguez, who continued to give him follow-

up care according to his medical needs after the procedure.  She

did the following: (1) treated Plaintiff on numerous occasions to

follow up on the procedure and on the original surgery by Defendant

Masto; and (2) treated his post-surgery complaints, including

rectal pain, as well as unrelated neck, shoulder and knee pain.

Defendant Rodriguez prescribed medication according to Plaintiff's

medical needs, including pain medication, ointments and laxatives.

Therefore, the Court finds that Defendant Rodriguez was not

deliberately indifferent because she did not deny treatment of

Plaintiff's serious medical needs.  Cf. Ortiz v. City of Imperial,

884 F.2d 1312, 1314 (9th Cir. 1989) (summary judgment reversed

where medical staff and doctor knew of head injury, disregarded

evidence of complications to which they had been specifically

alerted and, without examination, prescribed contraindicated

sedatives).

United States District Court
For the Northern District of California

1   Plaintiff also alleges that Defendants Rodriguez and Lee
2  failed to contact Defendant Masto when it became apparent that
3  Plaintiff's recovery from the hemorrhoidectomy was abnormal.
4  (Compl. at 3, 5.)  As explained below, Defendant Lee's only
5  involvement in the administration of medical care to Plaintiff
6  stems from his review of the treatment provided to Plaintiff by
7  SVSP officials.  First, Plaintiff provides no evidence indicating
8  that Defendant Masto made such an instruction.  Second, Defendant
9  Masto informed Plaintiff of the complications that could result
10 from the surgery.  While the record shows Plaintiff suffered post-
11 surgery pain, there is nothing in the record indicating that his
12 recovery was "abnormal."  Finally, as explained above, Plaintiff's
13 complaints of rectal bleeding were never verified upon examination.
14  (Christie Decl., Ex. N at 1, Ex. O at 1, Ex. P at 1.)  Therefore,
15 Plaintiff has failed to carry his burden of raising a genuine issue
16 of fact to support his claim that Defendants Rodriguez's and Lee's
17 actions in this regard rose to the level of deliberate indifference
18 to his serious medical needs.

19        2.   Defendant Lee

20             a.   Facts

21   On August 5, 2007, Plaintiff submitted Appeal Log SVSP-07-4309
22 alleging misconduct on the part of Defendant Lee, SVSP's Health
23 Care Manager, regarding Plaintiff's "healthcare needs and emergency
24 requests for help."  (Compl. at 16.)  On August 30, 2007,
25 Plaintiff's appeal was denied at the first level of review.  (<u>Id.</u>
26 at 17.)  On December 26, 2007, Defendant Lee partially granted
27 Plaintiff's appeal at the second level of review, stating that
28 "[s]taff complaints are handled via a different process," and that

United States District Court
For the Northern District of California

"appellant [would] be scheduled an appointment within the next 30 days for him to discuss his issues with his PCP." (<u>Id.</u> at 18-19.) On April 4, 2008, Plaintiff's appeal was denied at the Director's Level of review. (<u>Id.</u> at 14-15.)

On September 6, 2007, Plaintiff submitted Appeal Log SVSP-07-4372 alleging that prison staff "discovered [he] had an oversized prostate [and] a PSA-blood test[12] was done, but no cancer tumors were detected." (<u>Id.</u>, Ex. B at 31.) Plaintiff claimed that the PSA test was "inaccurate," and requested that "a cancer specialist examine [him] and/or that [his] healthcare be placed in the hands of an experienced doctor, not a nurse practitioner!" (<u>Id.</u>) On December 27, 2007, Defendant Lee addressed Plaintiff's appeal at the second level of review, stating that "appellant's request to be seen by an experienced doctor and not by a nurse practitioner [was] denied in that inmates may not choose who serves their medical needs in yard clinics." (<u>Id.</u> at 35-36.) On April 7, 2008, Plaintiff's appeal was denied at the Director's Level of review. (<u>Id.</u> at 29-30.)

On December 13, 2007, Plaintiff submitted Appeal Log SVSP-07-5334 requesting "medical help for a streptococus [sic] infection and profuse bleeding everytime [he had] a bowel movement throughout September, October, November, and . . . December" and alleging that "[n]othing [was] being done." (<u>Id.</u>, Ex. A-1 at 21.) The first level of review was bypassed, and on February 26, 2008, Defendant Lee partially granted Plaintiff's appeal at the second level of

---

[12] Prostate-specific antigen (PSA) is a substance produced by the prostate gland. Elevated PSA levels may indicate prostate cancer or a noncancerous condition such as prostatitis or an enlarged prostate.

United States District Court
For the Northern District of California

review, stating:

> The appellant was seen on January 29, 2008 by the PCP-MD.  On January 31, 2008 a colonoscopy was completed.  On February 5, 2008, the appellant was seen in a PCP-MD follow up appointment.  On February 15, 2008 the appellant was seen in Audiology.  On February 19, 2008 an x-ray of the upper GI was completed, and on February 20, 2008 the appellant was seen on the RN Line.  [¶]  It is in the opinion of the reviewer that the First Level review was appropriate and the appellant is receiving the appropriate medical care and treatment by licensed providers as is medically indicated.

(Id. at 23-24.)  On June 2, 2008, Plaintiff's appeal was denied at the Director's Level of review.  (Id. at 19-20.)

On January 9, 2008, Plaintiff submitted Appeal Log SVSP-08-0163 alleging that none of the "incompetent medical staff (including Rodrigues [sic])[13] ever attempted to do a test of the blood in [his] stool."  (Id. at 4.)  The first level of review was bypassed, and on February 22, 2008, Defendant Lee addressed Plaintiff's appeal at the second level of review, stating:

> [Plaintiff] was seen on August 31, 2007 for a follow up from his surgery and again on September 18, 2007.  The appellant was seen by four other providers since that time.  On September 12, 2007, complaining of pain after a bowel movement, the appellant was seen by a Registered Nurse and given Senekot at that time.  There was no complaint of bleeding at that time.  On October 18, 2007, the appellant was seen and reported a bowel movement on 10/17/07.  At this visit the appellant was provided with Milk of Magnesia per the RN protocols.  On November 18, 2007, the appellant saw the PCP who explained the CEA results, which were improved since his last test.  The appellant saw a Registered Nurse on December 13, 2007 without any evidence of bleeding and also on December 18, 2007, assessed with no blood present.

(Id. at 5-6.)  On May 21, 2008, Plaintiff's appeal was denied at the Director's Level of review.  (Id. at 2-3.)

b.   Analysis

---

[13] At times in his complaint, Plaintiff misspells Defendant Rodriguez's name as "Rodrigues."

25

United States District Court
For the Northern District of California

1    Plaintiff claims that Defendant Lee's "policy [prohibiting]

2  most inmates from being allowed to recover from surgical procedures

3  in [the] prison hospital" subjected him to torture by Defendant

4  Rodriguez.  (Compl. at 3.)  Plaintiff fails to raise a triable

5  issue because he provides no factual basis for the existence of any

6  such policy.

7    Plaintiff also claims that Defendant Lee did nothing to

8  address Plaintiff's "numerous complaint[s] for oversight and

9  help . . . ."  (Compl. at 3.)  The Court construes Plaintiff's

10 claim to allege that Defendant Lee acted with deliberate

11 indifference to his serious medical needs because he did not

12 sufficiently investigate Plaintiff's claims of inadequate care when

13 he responded to the 602 appeals.

14    Defendant Lee provided decisions on Plaintiff's four 602

15 appeals at the second level of review on December 26, 2007,

16 December 27, 2007, February 22, 2008 and February 26, 2008.

17 (Compl. at 18-19; Ex. B at 35-36; Ex. A-1 at 23-24; Id. at 5-6.)

18 Each of Defendant Lee's responses to Plaintiff's inmate appeals

19 explained that his health record had been reviewed, and concluded

20 that the care provided to Plaintiff was appropriate.  Specifically,

21 Plaintiff's first 602 appeal regarding need for medical treatment

22 was partially granted by Defendant Lee at the second level of

23 review because a meeting with Plaintiff's PCP -- Defendant

24 Rodriguez -- was scheduled.  Defendant Lee also addressed

25 Plaintiff's second 602 appeal -- requesting to be seen by an

26 experienced doctor and not by a nurse practitioner -- stating that

27 such a decision was not to be made by inmates.  Plaintiff's third

28 602 appeal -- relating to his infection and rectal bleeding -- was

United States District Court
For the Northern District of California

1   also addressed by Defendant Lee, who determined that Plaintiff was

2   receiving appropriate medical care and treatment.  Finally,

3   Plaintiff's fourth 602 appeal -- alleging that SVSP medical staff,

4   including Defendant Rodriguez, were "incompetent" and never tested

5   the blood in his stool -- was considered by Defendant Lee who

6   determined that Plaintiff's needs were being addressed.

7   Plaintiff's disagreement with Defendant Lee's findings is

8   insufficient, as a matter of law, to establish deliberate

9   indifference.  See Franklin, 662 F.2d at 1344.  In addition,

10  Plaintiff presents no evidence that Defendant Lee's conclusions

11  demonstrated deliberate indifference.

12      Furthermore, to the extent that Plaintiff seeks relief against

13  Defendant Lee for his failure to grant his 602 appeals, this claim

14  must fail.  Prisoners have no absolute constitutional right to have

15  their grievances heard in a prison administrative appeal system.

16  Although state statutes or regulations may give rise to

17  constitutionally-protected liberty interests that cannot be taken

18  away without due process of law, California prison regulations do

19  not create such a liberty interest in an inmate grievance

20  procedure.  The regulations grant prisoners a purely procedural

21  right and set forth no substantive standards, see Cal. Code Regs.

22  tit. 15, § 3084 et seq. (applicable to state prisons), and such

23  provisions cannot form the basis of a constitutionally cognizable

24  liberty interest.  See also Smith v. Noonan, 992 F.2d 987, 989 (9th

25  Cir. 1993); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

26      Plaintiff has failed to carry his burden of raising a genuine

27  issue of fact to support his claim that Defendant Lee's actions

28  rose to the level of deliberate indifference to his serious medical

27

United States District Court
For the Northern District of California

1    needs.  Accordingly, Defendant Lee is entitled to summary judgment.

2          3.   Defendant Masto

3          Plaintiff maintains that, starting on August 30, 2007,

4    Defendant Masto mis-diagnosed Plaintiff, did not successfully carry

5    out Plaintiff's hemorrhoidectomy and did not do a follow up on the

6    surgery.  The Court's May 18, 2010 Order of Service listed the

7    claims against Defendant Masto as follows:

8          Plaintiff's allegation that Nurse Practitioner Rodriguez
           and Dr. Lee violated Dr. Masto's order to tell him if
9          Plaintiff's recovery was abnormal indicates that Dr.
           Masto was not aware of Plaintiff's post-surgery
10         condition.  Without knowledge of Plaintiff's condition,
           Dr. Masto could not have been deliberately indifferent
11         to Plaintiff's serious medical need.  If Dr. Masto
           "botched" Plaintiff's surgery or mis-diagnosed
12         Plaintiff, he might be liable for the state law tort of
           medical negligence, but he would not be liable for an
13         Eighth Amendment violation.

14   (May 18, 2010 Order of Service at 5.)  Therefore, because Plaintiff

15   has not amended his claim to include any additional facts that

16   state a cognizable claim against Defendant Masto, Plaintiff's claim

17   against Defendant Masto is DISMISSED with prejudice.

18         4.   Conclusion Relating to Remaining Defendants

19         In sum, the Court finds that Plaintiff has failed to raise a

20   triable issue of fact as to whether Defendants Rodriguez and Lee

21   acted with deliberate indifference under the subjective prong of

22   Farmer.  511 U.S. at 834.  Defendants Rodriguez and Lee are thus

23   entitled to a judgment as a matter of law on Plaintiff's deliberate

24   indifference claim.  Accordingly, Defendants Rodriguez's and Lee's

25   motion for summary judgment is GRANTED.

26         E.   Qualified Immunity

27         Defendants Rodriguez and Lee claim, in the alternative, that

28   even if Plaintiff's allegations revealed a constitutional

violation, qualified immunity would protect them from liability on Plaintiff's deliberate indifference claim.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Defendants may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  Id. at 205.  The threshold question in qualified immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. at 201.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful.  See Rodis v. City and County of S.F., 558 F.3d 964, 970-71 (9th Cir. 2009).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

**United States District Court**
For the Northern District of California

On these facts, viewed in the light most favorable to Plaintiff, Defendants Rodriguez and Lee prevail as a matter of law on their qualified immunity defense because the record establishes no Eighth Amendment violation.  However, even if a constitutional violation had occurred with respect to Plaintiff's claim of deliberate indifference to his serious medical needs, in light of clearly established principles at the time of the incident, Defendants Rodriguez and Lee could have reasonably believed their conduct was lawful.  See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002).

Defendants Rodriguez and Lee do not dispute that Plaintiff's right to be free from deliberate indifference to his serious medical needs was clearly established during the period within which the injuries complained of occurred.  Given the circumstances, however, Defendant Rodriguez's actions were reasonably calculated to alleviate Plaintiff's pain and treat the core cause of Plaintiff's condition.  Defendant Rodriguez personally treated or prescribed medications for Plaintiff at least eight times, and Plaintiff was seen by other medical staff on at least four occasions.  In addition, Plaintiff was prescribed several medications, including Acetaminophen with Codeine, Anusol ointment, Vicodin, Senekot laxatives, Ibuprofen, Milk of Magnesia, and Metamucil.  Meanwhile, Defendant Lee addressed Plaintiff's four 602 appeals, finding that his medical needs were being met.  Based on the evidence available to Defendants, their actions were reasonable and appropriately tailored to Plaintiff's condition and symptoms.  The Court finds that Defendants Rodriguez and Lee are entitled to qualified immunity because they have produced

sufficient evidence that reasonable officers in their positions would have believed that their actions were reasonable based on the circumstances they confronted.

Accordingly, Defendants Rodriguez and Lee are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment deliberate indifference claim, and their motion for summary judgment on this claim is GRANTED for this reason as well.

CONCLUSION

In light of the foregoing, the Court orders as follows:

1. Plaintiff's motion to strike portions of Defendant Rodriguez's declaration (docket no. 40) is DENIED as moot.

2. Plaintiff's motion to compel discovery (docket no. 46) is DENIED.

3. Plaintiff's claim against Defendant Masto is DISMISSED with prejudice for failure to state a claim.

4. Defendants Rodriguez's and Lee's motion for summary judgment (docket no. 39) is GRANTED. Plaintiff's federal claims stemming from the allegations in his complaints have all been resolved; however, the Court's ruling does not foreclose Plaintiff from proceeding with any related negligence or other state law claims in state court.

5. The Clerk of the Court shall enter judgment in favor of Defendants. All parties shall bear their own costs. The Clerk shall also terminate all pending motions and close the file.

6. This Order terminates Docket nos. 39, 40 and 46.

IT IS SO ORDERED.

DATED: 3/14/2012

_____
CLAUDIA WILKEN
United States District Judge